JOHN D. BATES, United States District Judge
Before the Court is [82] the government's motion for a stay pending appeal of [69] the April 24, 2018 order vacating the rescission of the Deferred Action for Childhood Arrivals ("DACA") program and [77] the August 3, 2018 order denying reconsideration of the April 24, 2018 order. Also before the Court is [81] the government's unopposed motion for clarification that the August 3, 2018 order was a final, appealable judgment.
The government seeks a stay of the Court's orders in their entirety or, in the alternative, at least insofar as they require the Department of Homeland Security ("DHS") to begin accepting applications for initial grants of DACA benefits and for advance parole under the DACA program. See Defs.' Mot. for a Stay Pending Appeal ("Gov't's Mot.") [ECF No. 82] at 1-2. Plaintiffs oppose the government's motion in part, urging the Court not to stay its orders in their entirety, but agreeing that a stay as to initial DACA applications would be proper. See Pls.' Partial Opp'n to Defs.' Mot. for Stay Pending Appeal ("Pls.'
*146 Opp'n") [ECF No. 83] at 1 (recognizing that "an imperfect 'status quo'-no new applicants, but renewals continue-has developed"). For the reasons that follow, the government's motion to clarify will be granted, and its motion for a stay pending appeal will be granted in part. The Court will stay its order as to new DACA applications and applications for advance parole, but not as to renewal applications.
The Court is mindful that continuing the stay in this case will temporarily deprive certain DACA-eligible individuals, and plaintiffs in these cases, of relief to which the Court has concluded they are legally entitled. But the Court is also aware of the significant confusion and uncertainty that currently surrounds the status of the DACA program, which is now the subject of litigation in multiple federal district courts and courts of appeals. Because that confusion would only be magnified if the Court's order regarding initial DACA applications were to take effect now and later be reversed on appeal, the Court will grant a limited stay of its order and preserve the status quo pending appeal, as plaintiffs themselves suggest.
I. MOTION FOR STAY PENDING APPEAL
Under Federal Rule of Civil Procedure 62(c), district courts generally have the authority to stay their orders pending appeal. Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). In determining whether to grant such a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Id.; see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 842-43 (D.C. Cir. 1977).
Traditionally, courts in this Circuit have considered these factors on a " 'sliding scale,' whereby 'a strong showing on one factor could make up for a weaker showing on another.' " Cigar Ass'n of Am. v. FDA, Civil Action No. 16-1460, 317 F.Supp.3d 555, 560, 2018 WL 3304627, at *3 (D.D.C. July 5, 2018) (quoting Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) ). Although recent decisions of the Supreme Court have called this approach into question,[1] "the district judges in this Circuit continue to adhere to binding precedent and apply the sliding scale approach to determine whether a movant is entitled to an injunction pending resolution of its appeal," id. (collecting cases), and plaintiffs do not dispute the propriety of that approach here, see Pls.' Opp'n at 2 n.1. Thus, if "the three other factors strongly favor issuing" a stay, then the government "need only raise a 'serious legal question' on the merits" for that stay to issue. Cigar Ass'n of Am., 317 F.Supp.3d at 560, 2018 WL 3304627, at *3 (quoting Aamer, 742 F.3d at 1043 ); see also Holiday Tours, 559 F.2d at 843 ("[A] court, when confronted with a case in which the other three factors strongly favor interim relief[,] may exercise its discretion to grant a stay if the movant has made a substantial case on the merits.").
As to the first factor, the Court finds that the government's appeal raises *147 "serious legal question[s]." Aamer, 742 F.3d at 1043. Those questions include whether DHS's decision to rescind DACA was subject to judicial review under the Administrative Procedure Act ("APA"), see 5 U.S.C. § 701(a)(2) (exempting from APA review "agency action [that] is committed to agency discretion by law"), and, if so, whether that decision was arbitrary and capricious, see 5 U.S.C. § 706(2)(A). Of course, this Court has already answered both questions in the affirmative: as the Court has explained at length elsewhere, DACA's rescission was both reviewable and unlawful because it was based chiefly on a "virtually unexplained" conclusion that DACA was unlawful. NAACP v. Trump, 298 F.Supp.3d 209, 249 (D.D.C. 2018). Nevertheless, the government has assembled a "substantial case on the merits," Holiday Tours, 559 F.2d at 843, and the fact that the Court has thus far been unpersuaded by that case does not preclude the issuance of a stay, see id. ("The court ... may grant a stay even though its own approach may be contrary to [the] movant's view of the merits."); see also Jewish War Veterans of the U.S., Inc. v. Gates, 522 F.Supp.2d 73, 79 (D.D.C. 2007) (granting a stay pending appeal where the nonmovant argued that a D.C. Circuit decision was "directly on point and controls the outcome of this case").[2]
The remaining factors lend sufficient support to plaintiffs' proposal for a limited stay pending appeal (i.e., as to initial DACA applications and applications for advance parole only) to render that stay appropriate in light of the government's "substantial" legal case. See Cigar Ass'n of Am., 317 F.Supp.3d at 561-62, 2018 WL 3304627, at *4. But they do not support the government's request for a stay of the Court's order in its entirety.
The second factor-the risk of irreparable injury to DHS-favors a stay, but only as to initial DACA applications and applications for DACA-based advance parole. The Court is unmoved by the government's assertion of injury resulting from its being "enjoined from implementing an act of Congress." Gov't's Mot. at 8. As the Court has already explained, DHS has been implementing that act of Congress (the Immigration and Nationality Act) under an ill-considered (and hence possibly incorrect) understanding of its enforcement authority. See NAACP, 298 F.Supp.3d at 249. Unlike an injunction prohibiting the exercise of statutory authority altogether, see New Motor Veh. Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1351, 98 S.Ct. 359, 54 L.Ed.2d 439 (1977) (Rehnquist, J., in chambers) (concluding "that any time a State is enjoined *148 by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury"), this Court's order simply corrects the improper exercise of that authority. To the extent that such an injury is cognizable at all, it is insufficient to justify staying the Court's order here.
The Court accepts, however, that the additional staff and other resources required for DHS to process initial DACA applications would constitute a cognizable injury. DHS estimates that full implementation of the Court's order would lead to the filing of over 100,000 initial DACA applications and 30,000 requests for advance parole, which would in turn require the hiring of 72 temporary employees and the reassignment or hiring of 60 full-time employees. See Gov't's Mot. at 9-10. But these burdens apply only as to initial DACA applications, since DHS has been accepting renewal applications since mid-2012, with the exception of a brief period in late 2017 and early 2018. See NAACP, 298 F.Supp.3d at 218-20.[3] The second factor therefore favors plaintiffs' proposed limited stay, not the government's full stay.
The third factor, the risk of injury to plaintiffs, again favors continuing the stay as to initial DACA applications and applications for advance parole, but not as to renewal applications. Although the government maintains that the termination of existing DACA benefits-which would immediately end DACA beneficiaries' work authorizations and could lead to their removal from the United States-is not an irreparable harm, this untenable proposition has been rejected by this Court and by several others. See NAACP, 298 F.Supp.3d at 245 (noting in the stay-of-vacatur context that "each day that the agency delays is a day that aliens who might otherwise be eligible for initial grants of DACA benefits are exposed to removal because of an unlawful agency action"); see also Regents of the U. of Cal. v. DHS, 279 F.Supp.3d 1011, 1046-47 (N.D. Cal. 2018) ; Batalla Vidal v. Nielsen, 279 F.Supp.3d 401, 434-35 (E.D.N.Y. 2018). And although there are currently two preliminary injunctions in place requiring DHS to continue accepting renewal applications, as the Court has previously noted, "those injunctions are both on expedited appeals and hence could be reversed in the not-too-distant future." NAACP, 298 F.Supp.3d at 245. This Court's order-which, unlike the preliminary injunctions entered in parallel litigation, is a final judgment-will therefore prevent irreparable harm to plaintiffs and all current DACA beneficiaries should those other injunctions be reversed. Hence, it will not be stayed as to renewal applications.
By contrast, the Court agrees with the district court in Regents that "while plaintiffs have demonstrated that DACA recipients ... are likely to suffer substantial, irreparable harm as a result of the rescission, they have not made a comparable showing as to individuals who have never applied for or obtained DACA" benefits. 279 F.Supp.3d at 1049 ; accord Batalla Vidal, 279 F.Supp.3d at 437 ("As in Regents, ... the court finds that the irreparable harms identified by Plaintiffs largely result from Defendants' expected failure to renew existing grants of deferred action and especially work authorization, not from Defendants' refusal to adjudicate new initial DACA applications."). The same is *149 true of advance parole. See Regents, 279 F.Supp.3d at 1049 (concluding that "inability to travel abroad ... do[es] not amount to [a] hardship[ ] justifying a provisional injunction requiring DHS to resume accepting applications for advance parole"); Batalla Vidal, 279 F.Supp.3d at 437 (citing Regents, 279 F.Supp.3d at 1048-49 ). Thus, like the second factor, the third factor supports a stay as to initial DACA applications and applications for advance parole, but not as to renewal applications.
The fourth and final factor-the public interest-also favors this limited stay. The Court has already recognized the disruption that would ensue if DHS were to begin accepting initial DACA applications pursuant to the Court's order but that order were later reversed on appeal. See NAACP, 298 F.Supp.3d at 244-45 (citing Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n, 988 F.2d 146, 150-51 (D.C. Cir. 1993) ). Just as this potential for disruption previously counseled in favor of a 90-day stay of the Court's order of vacatur, see id., it now suggests that the public interest would be served by a stay pending appeal as to initial DACA applications. Like the second and third factors, however, this fourth factor does not support a stay as to renewal applications, since DHS is already accepting those applications.
In sum, because the government's appeal raises "serious legal questions," and because the remaining factors-harm to DHS, harm to DACA beneficiaries, and the public interest-favor a stay of the Court's order of vacatur as to initial DACA applications and applications for DACA-based advance parole, the Court will grant the government's request for a stay as to those applications. But because the three equitable factors do not favor a stay as to applications for the renewal of DACA benefits, pursuant to the "sliding scale" approach employed in this Circuit, Cigar Ass'n of Am., 317 F.Supp.3d at 560, 2018 WL 3304627, at *3, the Court will not stay its order as to renewal applications. And the Court notes again that plaintiffs agree to this limited stay of the Court's order pending appeal. See Pls.' Opp'n at 15-16.
II. MOTION FOR CLARIFICATION
Finally, the government has moved for clarification that the Court's August 3, 2018 order was a final, appealable judgment. See Defs.' Mot. for Clarification Regarding Entry of Final Judgment ("Gov't's Mot. for Clarification") [ECF No. 81] at 2-3. The government also seeks an order dismissing plaintiffs' constitutional challenges to DACA's rescission as moot. See id. at 3. Plaintiffs oppose the dismissal of their constitutional claims but agree that the Court's August 3, 2018 order is final and appealable. See id. at 3 n.2.
Initially, the Court deferred ruling on plaintiffs' constitutional challenges to DACA's rescission pending DHS's response to the April 24, 2018 order vacating DACA's rescission on administrative grounds. See NAACP, 298 F.Supp.3d at 246 (explaining that DHS "could, on remand, alter DACA's rescission in ways that might affect the merits of plaintiffs' constitutional claims"). Because the Court has since declined to reconsider its April 24, 2018 order, a decision on plaintiffs' constitutional challenges to DACA's rescission is unnecessary. See Alabama Power Co. v. EPA, 40 F.3d 450, 456 (D.C. Cir. 1994) (declining to address a claim rendered moot by the court's vacatur of the agency's action). Moreover, the Court has already entered final judgment on plaintiffs' remaining administrative and constitutional claims. See NAACP, 298 F.Supp.3d at 249. Thus, the Court's August 3, 2018 order denying reconsideration "adjudicat[ed] all the claims and all the parties' rights and liabilities" in this action *150 and was therefore a final, appealable order. Fed. R. Civ. P. 54(b).
* * *
For the foregoing reasons, the government's motion for a stay pending appeal will be granted in part, and the Court will stay its order of vacatur as it applies to initial DACA applications and applications for DACA-based advance parole. The government's motion to clarify will also be granted. A separate order has been issued on this date.

See id. (noting that, following the Supreme Court's decision in Winter v. Natural Resources Defense Council, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), a case that dealt with preliminary injunctive relief, "it remains an open question whether the 'likelihood of success' factor is an 'independent, free-standing requirement' " (quoting Aamer v. Obama, 742 F.3d 1023, 1043 (D.C. Cir. 2014) ).

Many of the defects in the government's merits case are apparent even in its motion for a stay pending appeal. For example, the government reiterates its illogical reading of Crowley Caribbean Transport, Inc. v. Peña, 37 F.3d 671 (D.C. Cir. 1994), whereby a court could reject "an enforcement decision's supporting rationale" and yet be powerless to remedy the unlawful "enforcement decision itself," Gov't's Mot. at 6. Similarly, the government relies on United Automobile Workers v. Brock, a decision that expressly acknowledged that "review might be available even for a nonenforcement decision" where, as here, "that decision is predicated solely on the agency's interpretation of a statute" or other law. 783 F.2d 237, 245 n.10 (D.C. Cir. 1986) (emphasis added); see id. at 245 n.9 (declining to review the decision at issue in that case because there, unlike here, the agency's "decision not to take enforcement action ... was predicated on a combination of both statutory and discretionary grounds"). The government also continues to advance the flawed premise that Texas v. United States, 809 F.3d 134 (5th Cir. 2015), supports DACA's rescission, this time "direct[ing]" the Court to the Fifth Circuit's opinion as though it were somehow that court's responsibility-and not DHS's-to explain DHS's decision to rescind the DACA program. Gov't's Mot. at 7.

When DHS rescinded DACA in September 2017, it immediately stopped accepting new DACA applications but continued to accept certain renewal applications that were filed within the next thirty days. Id. at 218. Then, in January 2018, a district court in California ordered DHS to resume accepting renewal applications. Id. at 220.